The following cases are scheduled for argument this morning, Tuesday, April 15, 2025. Case number 24-1548 from the Eastern District of Missouri, United States v. Deoman Reeves. Second case for argument, case number 24-2420 from the Eastern District of Missouri, Maria Ellis v. Nike, USA, et al. Third case for argument, case number 24-2450 from the Western District of Arkansas, Judge Funke v. Think Three Fold. Case number four for argument, case number 24-2438 from Northern Iowa, United States v. Edwin Diaz. Last case for argument, case number 24-2323 from Eastern Arkansas, United States v. Mohamed Aref. The cases submitted on the briefs and record today are case number 24-1474 from Western Missouri, Karen Carroll et al. v. Brunswick et al. and case number 24-1703 from Eastern Missouri, United States v. Frensland Bell. The first case for argument is United States v. Deoman Reeves. Thank you, Mr. Schottel. Good morning, judges. May it please the court, counsel. Counsel. This case is United States v. Deoman Reeves, criminal case, of course. Mr. Reeves was charged with, I believe it was ten counts. There were possession with intent to distribute counts, two 924, three 924C counts. The only counts that we have appealed that are before the court today, obviously in the briefing, is count 14, is the 924J, the discharge of a firearm resulting in death, and count five, which was one of the 924C counts that Mr. Reeves was convicted of. And we argued that there was insufficient proof to support that conviction. The same argument on count 14. Also, there were several jury instruction errors that were raised in the brief that I'd like to address today. Also, there were instructions that were not submitted that it's an appellant's argument that should have been submitted by the government based upon the indictment itself and based upon the case that they brought and the arguments they made. And also, the last two counts were the appeal of the motion to suppress the precision location information, the PLI. There's been a lot of recent cases, even at the Supreme Court, on that issue. And the last count, of course, is the motion to sever that was denied to sever the count 14, the 924J, from all these other drug counts that were, frankly, we didn't defend them. My client pretty much admitted that he was liable for those counts. They were videotaped, undercover buys. So he said, I'm good for those counts. But we vehemently defended the other two counts that are before the court today. Counsel, I'm particularly interested in count five. And is it your understanding that the government is not arguing that the firearm in question for that count is they're not arguing that it's the one that was sold later that day, but it's some other firearm?  You see, what they did was they took two separate instances and presented them to the jury. And one of them was a Salem firearm where there were no drugs involved at all. So that's not a 924C case. Well, it's also my understanding that the firearm that was sold was not present during the sale. I believe that's correct, Judge, from my memory of the facts. But our issue on the count five, on the actual drug sale that was an undercover buy, I think by a law enforcement agent, it was videotaped. But there was no picture of a gun. There was no gun in my client's hand. There was none on his lap. There was none in view anywhere. The government did not call the individual who conducted the undercover buy to give testimony that I saw a gun. There was a gun on his lap. There was a gun under his leg. Nothing. It's my understanding that of the four controlled buys, there was evidence that he was armed during one of the four buys. I think the government will argue that, well, he probably was armed during this one, too. Is that enough? Well, no. And that's the problem with – that's my problem with the government's argument is that we throw everything against the wall and whatever stick sticks. And, well, if he did it on the 14th of November, oh, well, he had to have one on the 14th of October. But wasn't there some testimony that when he sold fentanyl, he always carried a gun? And wouldn't that be enough for a jury to reach the conclusion that he was selling fentanyl that day and had a gun? I don't recall any testimony that said that. It said that they would. He would. Not every time. There was no testimony in the record by even the co-conspirators that Mr. Reeves possessed a gun at all times, every day, whether – Well, wasn't the testimony, though, that he would carry the gun when he was selling fentanyl? I don't recall that specific testimony. Because when these – when the defendants, including Mr. Reeves, I believe the testimony was most of the time they were by themselves. There was evidence of one or two occasions, I believe, in the testimony trial where there was more than one person present in the transaction. But the testimony is that most of the time, majority of the time, they each sold fentanyl on their own, yet they conspired together to measure it, cut it up, mix it, to distribute it. So those are the facts in the case. Now, the real issue on Count 14 is, based upon the facts of this case, does this fall under the statute? Is this a federal, quote-unquote, homicide, or is this a state murder case? So what happens in this case is there was a state murder case, and it was charged, and it wasn't Mr. Reeves. It was his co-conspirator. So he wasn't in the original indictment. So they supersede the indictment. They bring him in the case. So now he's in the federal case. They get him to flip, and they flip Jones, another one, another co-conspirator to testify against Mr. Reeves. But the only testimony they offered to implicate Mr. Reeves is that when he got back in the car, he said, I got a little dude. That's the extent of the evidence. There's no hair follicle evidence in this case. There's no gun casing evidence in this case. There's no DNA evidence. There's no eyewitness testimony. And in fact, the day before, which is very important to this case, the day before, Jones is with his co-defendant and McDaniels. And McDaniels is trying to hook up with this guy's girlfriend. And he had a beef with this guy, and they were part of their own little gang. This guy being Anderson or who? I'm sorry? Who is this guy you're talking about? McDaniels. I know, but who was he trying to? He was with Jones in Jones' apartment. When Jones got shot. With two girls.  Okay. And Jones says, get that guy. No, Jones didn't say. Jones ran. I thought Jones was shot in the arm and handed his gun to McDaniels. Right. And McDaniels shot twice out the windows, and that was the end of it. So who was this guy? What was McDaniels there for? He was there to try to romance or get involved with the other girl that was at Jones' apartment. There were two girls, Jones and McDaniels. It turns out one of the girls was Jones' girlfriend. The other girl turned out to be a girlfriend of these three guys, Bone, Squirty, and some other, the other guy's name, I can't remember. So these guys show up. The girl runs out, and then the bullets fly. So basically, the next day, this is a retaliation for Jones being shot in the arm. So all the defendants in the case, with the exception of McDaniels, Jones, my client, and Bell were three good friends. The only way McDaniels is in this case is because he's friends with Jones. And he hadn't seen him in a long time, decided to meet up with him, tries to hook up with this girl, and ends up getting Jones shot. So, and one of the things that is most telling that I would like to quote from, and obviously, is possession of a firearm, and in furtherance of that possession, the discharge of the firearm causes the death of another. Well, the government even admitted in its pretrial brief, the government in the pretrial brief did not say anything that this murder or this killing had to do with possession in furtherance of a drug trafficking crime. In fact, I was going to ask, I didn't see in the briefs hardly any reference to what evidence the jury heard about Anderson in relation to all of this stuff. Was he a drug trafficker? Was he a buyer? Who was he? Little dude, I guess is what we're talking about. Oh, he was just in the wrong place at the wrong time. I thought Reeves chased him up the alley. No, there were a group of people, apparently. Why did they chase him? I don't recall any evidence of anybody chasing him. There was allegedly shot into a crowd, and that's how Anderson got killed. It wasn't even the right guy that they were trying to get revenge against. But to finish my point, the government admitted in its pretrial brief that the shooting and killing of DA Anderson was not, quote, during and in relation to a drug trafficking crime. And they stated, and I quote exactly what the government presented to the court in the pretrial brief. According to McDaniels, he, Mr. Reeves, and Bell shot at and killed DA in retaliation for the shooting of Jones on October 20, 2019, which was the day before DA was shot and killed. That's not even a statement that supports their own charge in count 14. That's a state retaliation homicide case. Even if it's to protect the drug organization? There was no testimony about no drug organization. Well, there was plenty of testimony about dealing fentanyl. I'm sorry, judge. There was plenty of testimony about dealing fentanyl. And that this group of people were doing that. Right. So couldn't a jury infer that this was done in retaliation to protect the drug organization? How can you make that stretch when it's over a fight over a girl? Okay. I mean, that's my argument and response, judge. I mean, if the government has the burden of proof and their own evidence did not prove count 14 beyond a reasonable doubt. And actually, there was no testimony that they possessed fentanyl on the day Anderson was killed when they were out looking for this guy that shot Jones the night before. There was not a single testimony from any government witness. And we didn't even call any witnesses. We recalled McDaniels, but that was still the government's witness. So if the evidence is there, not there, Mr. Reeves must have been acquitted on this count. Because this was not a possession of a firearm in furtherance of a drug trafficking crime and a discharge in a weapon that resulted in death. The evidence just not simply supported. And also I know I'm over my time. In the jury instructions, there is two quick points I wanted to make. Instruction number 32, which is the verdict director instruction, it does not even match 6.18. This is all briefed. And you got such a high hill to climb with jury instructions. Well, there's some. Why don't you just rest on the briefs? Well, there was a big hill. There was a couple of things that weren't pointed out in the brief that I would like to add, though. Judge, you got you got 30 seconds. All right. 30 seconds. In the indictment, count 14. The government even cited killing as a murder is defined in 18 U.S.C. section one, one, one, one, one. And on the second page of count 14, it discusses maliciously and and with premeditation. Now, the government did introduce or offer. You got 10 seconds left. Instruction 34, which went to malicious. But they did not offer an instruction as to premeditation. And that's in the model code. And it was not offered. And it should have been by law, by what was by what was stated in the indictment. And for those reasons, that count should Mr. Ray should have been acquitted on count 14. Thank you, Judge. Thank you. Good morning, Your Honor. May it please the court.  Paul DeGrosso for the United States. And I was one of the trial lawyers at the district court. You know, the verdict is the verdict. And Mr. Schottel, with all due respect, would like to change that verdict and have you replace your judgment for that of the jury's judgment on the evidence in this case. I would submit that the evidence was overwhelming of guilt on all counts that he was convicted of. I don't agree with the idea that there was no evidence that Mr. Reeves was armed when he sold drugs on the 14th of November. Mr. Schottel would like the court to believe that the absence of video evidence means there's an absence of evidence. But I have the luxury of the jury's verdict. And you view the evidence in the light most favorable to the verdict. That includes the reasonable inferences that the jurors could have drawn from that evidence. So, counsel, what was the evidence that the jury had before it? They heard evidence that Mr. Reeves was armed on November 4th, the first time he sold to an undercover agent. And that was surveilled by the undercover detectives and agents. His co-conspirators were armed at times during some of the undercover sales that Mr. Reeves was involved in. A gun was seized from his car when he was arrested after indictment. His phone provided evidence to the jury, ample evidence, that not only did he deal in firearms, but he possessed those firearms. He held himself out as a reputation as being an enforcer or shooter, that he liked to use firearms. There was ample evidence in the record that jurors could have inferred that him being a drug dealer, he is armed each time he sells drugs. Sounds like propensity evidence to me. I didn't argue propensity to the jury, Your Honor. I argued that the evidence was there that he was armed when he sold drugs. Getting back to Judge Grunder's question, and perhaps there's evidence that I'm not aware of, but what I'm looking at is page 113 of the trial transcript, volume 3. Jones said that Reeves was sometimes armed. And so the evidence for the jury that I'm aware of is that he was sometimes armed. Well, Jones wasn't with Reeves every time he sold drugs, so he didn't, I don't think he exaggerated his testimony. I think his testimony was believable to the jury because he could only say sometimes. And there was evidence that he was armed in one of the four controlled buys. He was armed in the very first controlled buy, Your Honor, and then in a subsequent buy, Mr. Bell was armed, one of the co-conspirators. And he was visibly armed. He had the gun in his lap. So it sounds like speculation and propensity to me. I don't see the evidence before the jury that he was armed on November 14th. Well, Your Honor, the jurors found him guilty beyond a reasonable doubt of that count. And I don't know that, in light of that verdict, I don't know how we can change our minds about what the jurors saw or didn't see, what reasonable inferences they drew from that evidence. Well, we're here to review the sufficiency of the evidence. That's our job. Well, I respect that, Your Honor. But the defense argued at trial that there was no evidence that he was armed, and the jurors rejected that argument. He's making it again, of course, to this Court. But are we to replace the jurors' judgment about what the evidence showed and proved? Clearly, I mean, there's something else I'd like to say, Your Honor. The expert testimony in the case, which was uncontroverted, was that why do you show up – a drug dealer does not show up to a drug transaction unarmed. It would be dangerous to do so. And he testified, the expert testified, consistent with his experience, that armed drug dealers are armed in each instance when they're selling drugs. There's no reason for the jurors to have disbelieved that testimony, that it didn't apply to Mr. Reeves on November 14th or any other occasion when he saw himself. But it sounds to me like you're saying that all drug dealers should be charged with possession of a firearm at furtherance of the intent to distribute. No, Your Honor. I'm not saying that because I'm not talking about all drug dealers. I'm talking about this particular drug dealer. But I don't see the difference. Well, the jurors saw the evidence. Most drug dealers are armed. I think that's a fact. Well, this drug dealer was armed, Your Honor. He was armed consistently, and he talked about guns. No, sometimes. The evidence is that he was sometimes armed. Well. If it was consistently or always, he would be a different case. Well, November 14th, he was likely armed, wasn't he? He was. I mean, the jurors can infer that from the evidence, Your Honor, that he was likely armed on the 14th. I don't know how we disturb their verdict in that regard. And I never argued that because he sold a gun subsequent to the sale of the drugs, that that was the gun he was armed with. That was never the argument. He was charged with a separate offense for possessing that gun as a previously convicted felon. So the argument was always that he is armed when he sells drugs, and he was armed on the 14th as he was on other occasions. So the argument that he was always armed, but the evidence was that he was sometimes armed. Well, Your Honor. That's what you just said. Well, I may be saying that in this oral argument today, Your Honor. I don't know what the jurors talked about when they deliberated, but they heard the evidence, and they made their decision. I think it was proof beyond a reasonable doubt. I think the more important count to talk about in terms of the sufficiency of the evidence, quite frankly, is count 14. Because I think the appellant conflates the issues here between the C and the J, and he continues to argue that because there was no active drug dealing on the day that David Anderson, the victim, was murdered, that there's no nexus, and that there has to be a nexus between drug distribution and the murder itself under J. And that's just not the law, and that's not the text of the statute. He argued it again today. The evidence was that there was a dispute that led to the shooting of Arion Jones, but the retaliatory shooting was related to the protection of the conspiracy, of the members of the conspiracy, and that his possession of the gun that caused the death of David Anderson was in furtherance of their drug trafficking. We never argued that there was a connection between the shooting of Arion Jones and therefore that it related to drug trafficking because we didn't have to prove that. The text of the statute says we only have to prove the possession of the weapon was connected to the drug trafficking, and there was ample evidence of that. And that's how the jurors were instructed, and they were instructed correctly in this case. I don't know if there's any other questions. I think the evidence was presented in an organized fashion. I think the instructions fairly set out the issues for the jury. They deliberated over a day and a half. They were very considerate in how they considered the evidence presented, and I believe the verdict should stand, and I would ask you to affirm the convictions. Was it the first controlled by where you said there was evidence that he had a weapon? Was that weapon charged? It was not charged, Your Honor. He was charged with a 924C for that count. He was not charged with being a felon in possession of that weapon because the weapon was not seized. So we didn't have evidence of interstate nexuses in terms of a 922J count. He was charged with the distribution count and a 924C count with regard to the first controlled by, and that gun was visible on the video evidence. All right. My thinking was it would be easier to prove that case than the November 14th case. Well, he was charged in both, Your Honor. Okay. So the answer to my question was yes, it was charged. Yes, of course. Certainly easier to prove if the video evidence indicates he's sitting on the gun, and that was clear from the testimony and the record. I agree it wasn't so clear as to count five on November 14th, but the jurors were implored by defense counsel not to convict him of all counts just because there were so many counts charged. But quite frankly, his drug distribution occurred over a long period of time. They heard that evidence. They heard that he was armed. They heard that he used guns and sold guns, and I think it supports the verdict. If there's no other questions, I'll yield the rest of my time. Thank you. I didn't understand. My notes of the instruction issues, I don't see. He was arguing premeditation. Are there more instruction issues than my notes reflect? I don't remember that either, Your Honor. We have to prove that it was an intentional murder and premeditated, and the evidence was overwhelming in that regard. They planned the murder. They talked about it. They met. I thought he said you erred by not proposing an instruction. Well, the instruction defined murder and what murder is. Including premeditation. Including premeditation, wanton and cruel. Yes, it was instructed, Your Honor, and defined for the jury. I don't think they could have come up with any other verdict in that regard. This was not an accidental shooting. This was an intentional murder and retaliation for the shooting of Arianne Jones the previous day. And I'll answer your other question you had, Judge Loken. Mr. Anderson, the victim, was unfortunately in the wrong place at the wrong time. There were a group of people on a porch in University City in front of the house. Durante McDaniels testified that he drove with the co-conspirators to the scene and used City to look for a particular individual to retaliate. He identified somebody on the porch. Mr. Bell and McDaniels both fired towards that porch as the people scattered. Mr. Reeves was in the alley. He did chase the victim down, and it was a case of mistaken identity. He shot the person running between the houses, and he shot him twice, once in the neck. He was running away from the scene of the shooting as the two co-defendants were shooting down the street and spraying bullets through the neighborhood. Mr. Anderson was shot at close range in the neck, but it was, in the end, unfortunate, a case of mistaken identity. I mean, the murder is tragic in and of itself, but Mr. Anderson was a 19-year-old who had no connection with these people, which doesn't make Mr. Reeves not guilty, quite frankly. It makes it just a nastier crime, in my opinion. Thank you. Thank you. I'll give you a minute for rebuttal. Thank you, Judge. Well, Judge, I stand by my original argument that there simply was not proof you ought to be reading about to convict Mr. Reeves in 2014. But going by the notes, in note 8, where it talks about introducing on those other instructions. Now, I raised in the brief, and I listed all of those lesser-included offenses. I did not go through them in detail one by one, but I quoted the notes of the actual model instruction. So I'm elaborating on the intention A. If I should have done it in my brief, I was already 4,000 words over, and I thank the court for allowing me to file such a large brief, because there were so many issues involved in this case. But one point that actually Mr. Groves made for me was talking about all the evidence, and the jury could make the instance that this occurred. Well, if you look at the dates of the incident, the date of count 14 predated all of these undercover bodies, every single one of them, all of the video evidence, everything. They kind of worked backwards. The count 14 incident, the killing of Mr. Anderson, unfortunately, occurred, and then later they started setting up undercover bodies. And lastly, I just wanted to point out, and this is by, I did not go into detail in my brief in this. You're out of time. Come on. No. Yeah, I think I've read it. And find that there was not proof to convict Mr. Groves of count 14 or count 5. Thank you, Judge. Thank you, counsel. Thank you both, counsel. Complicated case, an argument has been helpful. We'll take it under advisement.